No. 45,153

PAUL HERRMAN, Plaintiff, *Appellee,* v. HARVEY FOLKERTS, *Defendant,* and NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, Garnishee Defendant, *Appellant.*

(446 P. 2d 834)

Opinion
filed November 9, 1968.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *H. Lee Turner* and *Max E. Eberhart,* both of Great Bend, were with him on the briefs for the appellant.

*Ivan D. Krug,* of La Crosse, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a controversy over the application of an exclusionary clause in a liability insurance policy.

The facts are very limited. It would appear that there was a stipulation as to the facts in the court below which was not made a part of the record on appeal. We must, therefore, consider the facts as stated by the trial court in its memorandum opinion as follows:

"The facts, as briefly as this Court can state them, are that the insurance company had issued a regular farm liability policy of insurance to the defendant Folkerts prior to September 27, 1964, and that it was in full force and effect on that date. On that date the defendant Folkerts went upon the plaintiff's farm without plaintiff's permission. Also without plaintiff's permission the defendant Folkerts took a tractor of the plaintiff and started taking it down the road

towards his own residence intending to use it for his own purposes. While doing so he damaged the tractor. . . ."

An action was brought by the plaintiff, Paul Herrman, to recover for the damages to his tractor. The petition, omitting the caption, read:

"Comes now the plaintiff and states that defendant damaged plaintiff's case tractor on or about September 27, 1964, that the damage was caused by defendant's negligence and at a time that he did not have permission to use said tractor, and that as a direct result plaintiff has suffered a loss of $717.65.

"Wherefore, plaintiff prays for judgment for the sum of $717.65 plus cost, interest and all other proper relief."

The defendant called upon his insurer, National Farmers Union Property and Casualty Company, garnishee defendant and appellant here, to defend.

The liability policy contained the following coverage:

"I. Coverage A-Farm and Personal Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage."

The coverage was subject to the following exclusionary clause:

"This policy does not apply:

. . . . . . . . . . . .

"(i) under Coverage A to property damage to any property owned by, rented to, occupied or used by, or in the care, custody, or control of, or transported by the insured;"

The insurer denied liability based on the exclusionary clause and refused to defend.

Judgment was entered by default. The journal entry read in part:

". . . Thereupon evidence is introduced on said petition and the court finds that the summons herein was served personally on the defendant, along with a copy of the petition herein, on the 14th day of October, 1964, and that no answer or other defense has been filed by the defendant in this action; the court further finds that the allegations in the petition are true and correct and that the defendant, while a trespasser, injured the plaintiff's tractor causing loss to the plaintiff in the amount of $697.12."

Pursuant to an affidavit filed on behalf of the plaintiff, an order of garnishment was issued directed to the defendant and his insurer. Again, the insurer denied liability contending as a matter of law it had no liability because the damages involved were caused by defendant's intentional wrongdoing, and the exclusionary clause in the policy excludes coverage.

The trial court concluded that the case presented only a question

of law without a genuine issue of any material fact and granted summary judgment for plaintiff. The reason for the trial court's conclusion was stated in its memorandum opinion. It first found that covering the insured for his own wrong would not be against public policy under the circumstances, and then concluded:

"The next contention presented by the insurance company is that the policy specifically excludes liability because the tractor was in the care, custody and control of the insured.

"It was conceded by Counsel that the defendant Folkerts was a trespasser. As such he had no right of possession. He entered upon the plaintiff's land and took his tractor wholly without right or authority. The words found in the insurance policy connote a lawful, normal and customary situation of 'care, custody and control'. The same can be said about the words 'occupied or used by'. It obviously was not rented by the plaintiff to the defendant, and any transportation by the defendant was just as much without authority as was defendant's possession. (Sec. 62 ALR 2nd 1247, and Gt. Am. Indem. Co. v. Saltzman cited therein, and found in 213 Fed 2nd 743.)"

The comment in the citation, 62 A. L. R. 2d 1247, constituted some authority for the trial court's ruling. However, the statement made in the annotation is much too broad and the broad statement is not supported by the case cited. The A. L. R. statement reads:

". . . In other words the term 'care, custody, or control' implies at least a temporary right to possession. Consequently, a trespasser having no right to possession whatsoever cannot have 'care, custody, or control' of the damaged property within the meaning of the exclusion clause. This conclusion was reached in Great American Indem. Co. v. Saltzman (1954, CA 8 Ark) 213 F2d 743, cert den 348 US 862, 99 L ed 679, 75 S Ct 85, in construing an exclusion clause of the kind under consideration. . . ." (p. 1246.)

It will be understood that there are many degrees or different classifications of trespass ranging all the way from an innocent trespasser to a willful and malicious trespasser. An intermeddler who enters upon the property of another simply to have an innocent look and accidentally, though negligently, damages personal property with no intention of using it or taking it into his "care, custody, or control" would no doubt be covered by the liability policy and would not be subject to the exclusionary clause. However, a much different situation would exist where a willful or malicious trespasser enters upon the property of another intending to and does take a vehicle into his own control and removes it for his own use without the consent of the owner.

It was the former situation which the court had under consideration in *Great American Indem. Co. of New York v. Saltzman*, 213

F. 2d 743, cited in A. L. R. as authority for the statement heretofore quoted.

In the *Saltzman* case the defendant, an airplane enthusiast, had in mind purchasing a new plane. He was attracted by a plane standing at an airport and entered the cockpit for the sole purpose of inspecting its mechanism and its various gadgets. The entrance was without the knowledge or consent of the owner. The defendant engaged the starter control and to his surprise and amazement the engines started propelling the aircraft into a hangar some ninety feet away resulting in considerable damage to the plane. The ruling of the United States Circuit Court of Appeals, Eighth Circuit, is stated in the head note as follows:

"Airplane enthusiast, who was insured under personal liability policy, which did not apply to 'use,' including loading and unloading, of aircraft, or to destruction of property 'used' by or in the 'care, custody or control' of insured, and who entered stranger's airplane without permission for purpose of inspection, did not have the airplane in his 'use' or 'care, custody or control' and was entitled to indemnity for loss sustained when he experimented with controls and caused airplane to run into hangar." (Headnote # 3.)

In the opinion it is stated:

". . . The acts of the plaintiff in this case were negligent acts and in that sense were wrongful but they were not, so far as disclosed, wilful, malicious, or criminal, and no public policy is involved in permitting one to insure against the results of such acts." (p. 748.)

We have no quarrel with the opinion in the *Saltzman* case. The insured did not intend to and did not take custody or control of the airplane. The case is no authority under the facts which we have before us where the tractor was willfully and wrongfully taken into the possession and control of the defendant for his own use.

Having no cases in point from this jurisdiction, we have examined the cases from other states which are cited in the briefs but do not find them helpful in view of the peculiar facts before us.

We are constrained to hold that under the facts in the present case the insured did have "care, custody, or control" of the tractor as those words are used in the exclusionary clause. Control of the insured refers to posessory handling of the property as distinguished from proprietary control.

Our decision is further influenced by the consideration that the limited facts as presented here constitute a crime in this state under the provisions of K. S. A. 21-544, which provides:

"That any person who shall take, carry away and use any horse or other

domestic animal, or any automobile or other vehicle or conveyance or other personal property of any kind, with intent to deprive the owner of the temporary use thereof, against the owner's will but not with the intent of stealing or converting the same permanently to his own use, such person shall, on conviction, be adjudged guilty of a misdemeanor and shall be punished by a fine of not more than five hundred dollars, or be imprisoned in the county jail not more than one year, or by both such fine and imprisonment."

It is generally held that an insurance policy is void as against public policy if its intent is to indemnify the insured against liability for his criminal acts. (44 C. J. S., Insurance, § 242b, p. 1005.) This court will construe a contract of insurance so as to uphold its validity if reasonably possible. (*Gas Co. v. Altoona,* 79 Kan. 466, 100 Pac. 50; *Keeler Co. v. Atchison, T. & S. F. Rly. Co.,* 187 Kan. 125, 354 P. 2d 368.)

The judgment is reversed with directions to the trial court to enter judgment for the garnishee, National Farmers Union Property and Casualty Company.

APPROVED BY THE COURT.