BENAVIDES, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s decision which concludes that it is unreasonable to construe the policy language to make any wind damage a catastrophe. In my view, the policy unambiguously provides that any damage to the insured property caused by wind is a “catastrophe” under the policy and, therefore, subject to the higher deductible.
The policy explicitly states that the higher deductible will apply to “Accidents ... In respect of Catastrophe, which will include wind, wave action, earthquake and flood.” Because a plain reading of the contract demonstrates that the definition of catastrophe specifically includes loss caused by wind, there can be no ambiguity as to whether the higher deductible applies to damage caused by wind; the parties clearly contemplated that where damage to the insured property is caused by wind, the higher deductible applies. Where, as here, the policy terms are unambiguous, the language of the policy alone expresses the parties’ intent, and the contract must be enforced as written. See Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex.1984). Therefore, because the catastrophe deductible provision unambiguously applies to damage caused by wind, and the parties do not dispute that the damage to the yacht basin facility was caused by wind, the higher deductible applies.
The majority notes that the word “catastrophe” has a plain and ordinary meaning and that a contrary meaning is not given in the definitions section of the policy. While the plain meaning of “catastrophe” does take the magnitude of an event or the quantum of damages caused by an event into account, in my view the policy clearly gives “catastrophe” a different, and more general, definition. Under Texas state law, where an insurance policy clearly gives a word a different meaning than its ordinary meaning, the meaning contemplated by the policy governs and the ordi *678 nary meaning of that word does not apply. See Security Mut. Cas. Co. v. Johnson, 584 S.W.2d 703, 704 (Tex.1979). Therefore, the ordinary meaning of the word “catastrophe” should be irrelevant to our analysis because the parties clearly contemplated that, for purposes of the policy, the higher deductible would apply to damage caused by wind, wave, earthquake, and flood — irrespective of the amount or extent of the damage caused by such loss.
Moreover, the parties to the policy did not include any express words of limitation limiting the applicability of the higher deductible to only certain types of wind damage. Because the parties can choose the language used in the contract, and the parties here did not include express words of limitation in the policy, we are powerless to alter the parties’ original intent, as manifested in the clear and explicit language of the contract. Std. Constructors, Inc. v. Chevron Chem. Co., Inc., 101 S.W.3d 619, 625 (Tex.App.-Houston 2003); see also Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517 (Tex.1995) (concluding that where express words of limitation do not appear on the face of an insurance policy, there is no ambiguity and the contract will be enforced as written).
In my view, the policy language dictates that all loss caused by, inter alia, wind damage amounts to a “catastrophe,” subject to the higher deductible. Accordingly, I would affirm the judgment of the district court, which held as a matter of law that the higher deductible applied because the damage was caused by wind.