INZER, Justice.
This is an appeal by Motors Insurance Corporation from a judgment of the Circuit Court of Warren County holding that appellant was indebted to the Estate of Mrs. Ludell B. Deen under the provisions of an insurance contract. The question to be determined is the effect of an “other insurance” provision of a property damage insurance policy issued by appellant in which Mrs. Deen was the insured. The case was tried before the court without the jury upon a stipulation of facts which are essentially as follows: On July 17, 1966, Mrs. Ludell B. Deen took her automobile to Lamar T. Loe Motor Company, Inc. to have certain repairs made. The company, as was its practice, allowed her to use one of the automobiles they maintained as “courtesy” automobiles. On that same day while operating appellee’s courtesy auto *540 mobile, Mrs. Deen negligently collided with a bridge abutment destroying the vehicle and fatally injuring herself.
At the time of the accident Motors Insurance Corporation had in full force and effect an insurance policy with Mrs. Deen as the insured. Also in full force and effect was a policy of Hardware Mutual Casualty Company which named Lamar T. Loe Motor Company, Inc., as insured. Pursuant to this latter policy Hardware Mutual paid appellee $2,800 for the destruction of the automobile and entered into a subrogation agreement for the rights appellee had against the estate of Mrs. Deen.
Hardware Mutual, as subrogee, brought suit in the Circuit Court of Warren County in the name of appellee against Billy B. Deen, administrator of the estate of Mrs. Deen and secured a judgment of $2,573. Appellee then filed a suggestion of garnishment against appellant to which an answer was made denying any debt owing to the estate of Mrs. Deen. Appellee contested the answer and the Circuit Court rendered a judgment against the garnishee, Motors Insurance Corporation.
The pertinent provisions of appellant’s policy covering Mrs. Deen are as follows:
CONDITIONS

13. Other Insurance
If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of this policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.

INSURING AGREEMENTS
Coverage E — Collision: To pay for loss caused by collision to the owned automobile or to a non-owned automobile but only for the amount of each such loss in excess of the deductible amount stated in the declaration as applicable hereto. The deductible amount shall not apply to loss caused by a collision with another automobile insured by the company.
DEFINITIONS
****** “Temporary substitute automobile” means any automobile or trailer not owned by the named insured, while temporarily used with the permission of the owner, as substitute for the owned automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
The pertinent provisions of Hardware Mutual’s policy covering appellee are as follows:
INSURING AGREEMENTS
Coverage E — Collision or Upset. Loss to any automobile covered hereunder caused by collision of the automobile with another object or by upset of the automobile but only for the amount of each such loss in excess of the deductible amount, if any, stated in the Declarations as applicable hereto.
******
III Automobiles Covered

(1) held by the insured for sale or used in the insured’s business as a garage including repair service or as demonstrators * * *
******
No benefit to Bailee. The insurance afforded by this policy shall not inure directly or indirectly to the benefit of any carrier or bailee liable for loss to the automobile.
*541 Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured’s rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
It was appellant’s contention in its answer to the Suggestion for Writ of Garnishment that since the loss of the automobile was covered by appellee’s Hardware Mutual policy the coverage offered by appellant was excess under the provisions of condition 13 set out above. With this contention the trial court did not agree and in a memorandum opinion stated in part as follows:
Mrs. Deen owned an automobile. Apparently conscious of the hazards of driving she paid a premium to insure her pocketbook against loss in event of collision, and this regardless of whose fault produced the collision damage to her car. She agreed, through acceptance of the policy, that if she procured other insurance against collision loss, that this insurer, Motors Insurance Corporation, would only have to pay her a pro rata amount of the total loss. She further agreed that if collision loss was occasioned to a substitute automobile which she was driving, that the obligation of Motors Insurance Corporation to her would only extend to paying the excess over any other valid and collectible insurance — which can only mean, valid and collectible by her — not by some third person. Certainly she has none, and none other is available to her. So that if this insurer is relieved of liability we would face the proposition of Mrs. Deen (rather her estate) being liable to pay for a collision loss, — for the very protection against which she had contracted and paid a premium to this Defendant.
The trial court relied upon the reasoning set out in MacDonald v. Hardware Mutual Casualty Co., 105 N.H. 458, 202 A.2d 489 (1964) and Mancuso v. Rothenberg, 67 N.J. Super. 248, 170 A.2d 482 (1961). In Mancuso the New Jersey court had before it for interpretation the policy issued by appellant and containing condition 13 in the same language as the policy now before us. That court held that the condition was ambiguous and that it was subject to two interpretations equally reasonable. We are in agreement with this holding. The court also pointed out that if appellant desired to clearly limit its coverage as is contended here that it could have easily done so. This statement is in keeping with the reasoning we used in K.L.M. Distributing Co. v. Washington General Ins. Corp., 215 So.2d 710 (Miss.1968), which involved an excess clause in an insurance policy providing that its coverage would be excess over any policy held by a non-owned or non-leased operator carrying a load of merchandise for the assured. Washington General contended, as does the appellant here, that because the non-owned carrier had insurance covering the loss of the merchandise its policy was on the excess. In answer to this contention we said:
There is no indication that the parties intended that the “excess” clause should relieve Washington General from liability because of the mere existence of a policy held by a non-owned or non-leased operator carrying a brokered load for K.L.M. We are of the opinion that the “excess” rider had reference to other insurance insuring the liability of K.L.M. In order for The Home Insurance Company’s policy to constitute “other insurance” within the meaning of Washington General’s “excess” clause, The Home Insurance Company’s policy must insure K.L.M. against liability for the fire loss in question, and the protection of the policy must be available to and enforceable by K.L.M. The “excess” clause in Washington General’s policy necessarily implies that the “other insurance” policy that would limit Washington General’s liability must be “primary” insurance affording K.L.M. protection from liability for the loss in question. The “excess” *542 clause in Washington General’s policy should not be interpreted in a vacuum, but in the context of the whole policy and the purposes for which it was issued and the premium paid thereon. The policy issued by The Home Insurance Company to Miles Trucking Service did not insure K.L.M. either as a named or unnamed insured, and it was not relevant to the “excess” clause relied upon by Washington General. Absent appropriate words indicating a contrary intention, the “excess” clause in Washington General’s policy should not be given a construction that results in K.L.M. having no coverage against liability for the loss involved. To do so would defeat the purpose the policy purported to serve. (215 So.2d at 713).
This holding and reasoning is applicable and controlling in this case.
Appellant correctly points out that condition 13 is aimed at avoiding the possibility of double coverage. However, there is no double coverage in the present case. It is as one textbook writer observed:
Separate policies issued to the bailor and bailee do not constitute as to each other “other insurance.” Consequently, where the plaintiffs’ policy insured them against loss of their merchandise and the defendant’s policy insured its holders against legal liability for any loss of the goods while in their possession, the policies covered different interests. 16 Couch Insurance 2d, § 62.97 (1966).
In American National Ins. Co. v. United States Fidelity & Guaranty Co., 215 So.2d 245 (Miss.1968), we said, “In brief, other insurance under an excess coverage clause must affect the same property, interest, and risks as those in favor of the insured under the primary policy.” (215 So.2d at 250). The policies in the case under discussion here covered separate and different interests.
Before appellant can prevail under a proper reading of condition 13, Mrs. Deen would have to have had coverage under Hardware Mutual’s policy. It is admitted that she had none due to the “no benefit to bailee” clause set out above. Since there was no valid or collectible insurance available to Mrs. Deen, the other insurance clause in appellant’s policy does not come into play and the judgment of the trial court must be affirmed.
For the reasons stated, this case should be, and is, affirmed.
Affirmed.
ETHRIDGE, C. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.